UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

TERESA GOLDEN,

    Plaintiff,

v.                                              CASE NO.: 6:23-cv-00610

SEDGWICK CLAIMS MANAGEMENT
SERVICES INC., a Florida for Profit     **JURY TRIAL DEMANDED**
Corporation,

    Defendant.
_____/

**JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT AND STIPULATION OF DISMISSAL WITH PREJUDICE**

Plaintiff TERESA GOLDEN ("Plaintiff"), and Defendant, SEDGWICK CLAIMS MANAGEMENT SERVICES INC. ("Defendant" or "Sedgwick") (collectively, the "Parties" or individually, "Party"), by and through the undersigned counsel, file this Joint Motion to approve the Parties' settlement and stipulation to dismissal of the above case with prejudice.

Plaintiff and Sedgwick have reached a settlement of this action. The Parties now respectfully request that the Court enter an Order approving the agreed-upon resolution reached between Plaintiff and Sedgwick of Plaintiff's Fair Labor Standards Act ("FLSA") claims (the "FLSA Settlement"). As detailed below, the Court should grant the Parties' Motion because the FLSA Settlement is fair,

1

adequate, and a reasonable resolution of the Parties' bona fide dispute as to liability and alleged damages under the FLSA.

The Parties state the following in support of the Joint Motion:

## I. INTRODUCTION

On April 3, 2023, Plaintiff initiated this action against Sedgwick by filing the instant case alleging that Sedgwick violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219 ("FLSA"), by failing to pay her overtime wages during her employment as a Benefits Liaison with Defendant.

Plaintiff asserts she was improperly classified as an exempt employee under the FLSA. Plaintiff further asserts she worked in excess of forty (40) hours per week throughout most of the relevant period and is owed overtime and liquidated damages. Sedgwick denies the material allegations of Plaintiff's Complaint and asserts Plaintiff was properly classified as exempt during the time she was in the position of Benefits Liaison. As such, Sedgwick asserts Plaintiff was already properly compensated through payment of her salary and therefore, no additional money is owed. Sedgwick further asserts that even if Plaintiff was improperly classified as exempt: (1) the number of hours over 40 per week that Plaintiff worked is substantially lower than claimed by Plaintiff; and (2) Plaintiff would only be entitled to .5 hourly pay since she worked different hours each workweek and Sedgwick believes that Sedgwick and Plaintiff had a clear and mutual understanding

that Plaintiff's salary was intended to compensate her for all hours worked. Sedgwick also disputes that Plaintiff is entitled to a 3-year statute of limitations under the FLSA, or that Sedgwick willfully violated the FLSA.

On May 5, 2023, this Court entered a Scheduling Order. (Doc. 16). Pursuant to this Order, the parties exchanged documents on May 26, 2023. Plaintiff also filed her Answers to Court Interrogatories on June 16, 2023. (Doc. 21).

Sedgwick's document production included data to assist the parties in reviewing Plaintiff's claims beyond the documents required to be produced by this Court's Scheduling Order. This data assisted the Parties' analysis of hours worked by Plaintiff. Both sides analyzed a production from Sedgwick which included Plaintiff's wage statements, job history, and log on and log off activity from various systems that Plaintiff utilized to perform her job duties.

After exchanging this data and the filing of Plaintiff's Court Interrogatories, the Parties, through their counsel, began settlement discussions in June, 2023. The Parties discussed the case in depth, including detailed discussions of what the various electronic records showed. In this regard, the Parties utilized the available records reflecting time Plaintiff logged in and out of Sedgwick's computer systems, to each create their own respective data analyses of the log on and off records, for purposes of negotiations on the amount of damages that might be obtained if Plaintiff were to prevail on her misclassification claim. Based upon these negotiations,

analyses and exchange of information, the Parties stipulate and represent that there is a bona fide dispute between the Parties regarding the merits of Plaintiff's case and the wages, other damages and relief claimed as well as Sedgwick's defenses thereto.

Also, Plaintiff's recovery was based upon various factors including work duties, work activity as reflected in Sedgwick's computer systems and as estimated by Plaintiff. Based upon the facts and arguments discussed and presented between the Parties, Plaintiff and Sedgwick agreed to resolve this case in its entirety on terms which they mutually stipulate and agree are fair, reasonable and adequate. The Parties understand and agree that continuing to litigate the issues in this case would be expensive, time consuming, and create much uncertainty for the Parties. For instance, if Sedgwick prevailed regarding Plaintiff being properly classified as exempt, Plaintiff would not be entitled to any overtime pay at all. Similarly, even if Plaintiff were to prevail on her claim that she should have been paid as a non-exempt employee entitled to overtime, she might be entitled to significantly less than the alleged damage calculations if she could not establish the extra hours worked. Sedgwick also took the position that Plaintiff was already compensated for all hours worked through her salary; so even if overtime would be due, Sedgwick argued that the amount owed would be the .5 hourly premium rather than 1.5 times the regular rate. On the other hand, Plaintiff's position was that if she were to prevail, her recovery from Sedgwick may be much greater.

Accordingly, Plaintiff and Sedgwick now bring this joint motion to seek approval of the FLSA Settlement from the Court.

## II. OVERVIEW OF SETTLEMENT TERMS

As part of the FLSA Settlement, Plaintiff has entered into an FLSA Settlement and Release Agreement (the "Agreement"), with mutually acceptable language drafted and reviewed by the Parties' respective counsel. A fully executed copy of the Agreement is attached hereto as Exhibit "A" for the Court's consideration.

The Parties have not entered into any other agreement (oral or written) that has not been disclosed to the Court and (a) is in any way related to this action, or (b) contains a release of non-FLSA claims, a confidentiality provision, or a non-disparagement provision.

Plaintiff asserts that she has no other claims against Sedgwick for wage and hour violations for the relevant time period in this action for the period during which she was employed in the Benefits Liaison position.

Plaintiff's attorney's fees and costs were negotiated separately and without regard to the amount to be paid to Plaintiff. As such, Plaintiff's recovery was not adversely affected nor compromised in any way by the amount of fees and costs to be paid to her attorneys under the Agreement.

In total, Defendant agreed to pay Plaintiff a sum total of $15,000.00 in unpaid wages and liquidated damages and $15,000.00 in attorneys' fees and costs.

In exchange for payments made under the terms of the Settlement Agreement and Release of the FLSA and wage claims during the relevant time period while Plaintiff was a Benefits Liaison, Plaintiff agrees to release Sedgwick from her overtime claims while she was in the Benefits Liaison position as set forth in Exhibit A.

The Parties and their respective counsel agree that the settlement amount and the Agreement represents a fair and full resolution of the FLSA wage and hour claims during the relevant lookback period in this case for the time period while Plaintiff was a Benefits Liaison. The Parties further believe and agree that the payment to be made under the Agreement represents a fair, reasonable consideration for settlement of Plaintiff's wage and hour claims against Sedgwick. Accordingly, the Parties respectfully request the Court approve the FLSA settlement and stipulated dismissal of this case with prejudice.

### III.     MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION
#### A. Standard of Review.

The FLSA requires employers to pay employees minimum wages and overtime compensation, where applicable, unless an exemption applies. *See* 29 U.S.C. §§ 201, *et seq.* Here, Sedgwick contends that the Administrative Exemption applies to Plaintiff in her role as a Benefits Liaison, while Plaintiff contends that the

exemption was not properly applied to her. Without either Party admitting liability/lack of liability, the Parties now wish to fully resolve the claims in this suit.

Where an employee files a claim under the FLSA for alleged unpaid wages, there are only two ways in which contested claims under the FLSA can be effectively and fully settled and released by employees – through supervision by the Secretary of Labor, or, in the context of a private lawsuit brought by an employee against an employer through approval of the proposed settlement by the court. *See* 29 U.S.C. § 216(c); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). In *Lynn's Food*, the Eleventh Circuit made clear that these are the only means by which an FLSA settlement may become final and enforceable:

> There are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees. First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them….The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations. When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness.

Thus, unless the parties have the Secretary of Labor supervise the payment of unpaid wages owed or obtain the Court's approval of the settlement agreement, the parties' agreement is unenforceable. *Id*.

In detailing the circumstances justifying court approval of an FLSA settlement in a litigation context, the Eleventh Circuit explained:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.* at 1354.

Courts should consider the following factors in determining whether a settlement is fair and reasonable:

(1) the existence of fraud or collusion behind the settlement,

(2) the complexity, expense, and likely duration of the litigation,

(3) the stage of the proceedings and the amount of discovery completed,

(4) the probability of plaintiff's success on the merits,

(5) the range of possible recovery, and

(6) the opinions of the counsel.

*Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010).

## B. The Settlement is a Fair and Reasonable Resolution of Bona Fide Disputed Claims.

The Court should allow Plaintiff to settle and release her claims against Sedgwick as stated in the Agreement. The rationale of 29 U.S.C. § 216(c) and *Lynn's Food* is to ensure that FLSA employees are compensated and the settlement is fair. As described in *Lynn's Food*, this proposed settlement arises out of an adversarial context. All Parties have been represented by experienced wage and hour counsel throughout this litigation. The Parties' agreement to resolve this matter is not the result of any fraud or collusion by, between or among any of the Parties or counsel for the Parties. The Parties' respective attorneys have zealously represented their clients' interests since the commencement of this litigation, including through many hard-fought discovery disputes. Each of the factors identified by the *Dees* court above go in favor of this Court approving this settlement.

### i. There is No Risk of Fraud or Collusion

Here, there was no fraud or collusion and there is no evidence of such behavior. Each party was independently represented by counsel. Plaintiff was represented by Lytle & Barszcz, P.A., and Sedgwick was represented by Wilson, Turner & Kosmo, LLP, and Quintairos, Prieto, Wood & Boyer, P.A. Each attorney involved in this case has extensive experience in litigating claims under the Fair Labor Standards Act, including claims for unpaid overtime compensation. Each

counsel was obligated to and did vigorously represent their respective clients' interests.

          ii.  <u>The Complexity, Expense and Likely Duration of the Case</u>

Plaintiff filed this lawsuit on April 3, 2023. This Court entered a Scheduling Order on May 5, 2023. The parties exchanged or filed documents and information pursuant to this Court's Scheduling Order. (Doc. 16). The Parties prepared their own respective data analyses. The Parties then engaged in negotiations. The settlement was memorialized in the written settlement agreement attached hereto as Exhibit A.

Various issues are unsettled; at a minimum, the issues a judge or jury would need to decide include: (1) whether Plaintiff was properly classified as exempt from overtime, including whether she was properly classified as exempt under the FLSA; (2) if Plaintiff was not properly classified as exempt, (a) the number of hours worked for which she would be entitled to overtime; (b) whether Plaintiff's salary was intended to compensate for all hours worked, which in turn impacts the rate at which overtime would need to be paid; and (c) whether a 2-year or 3-year statute of limitations applies to Plaintiff's claims.

Although the Parties exchanged documents and information, more discovery would still need to be completed including depositions and further document production. In addition, the Parties anticipated needing to expend significant time and resources in regard to dispositive motion practice and preparation for trial.

Therefore, the complexity, expense, and length of continued litigation weighs in favor of this settlement. *See, e.g. George v. Acad. Mortg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1370 (N.D. Ga. 2019) (explaining that FLSA claims typically involve complex mixed questions of fact and law, and that litigating them is difficult and time consuming, such that the trial judge should foster an atmosphere that allows litigation to be settled promptly and fairly to avoid the expense, delay and uncertainty of trial).

### iii. The Parties Engaged in Adequate Discovery

The Parties exchanged documents and information pursuant to this Court's Scheduling Order. (Doc. 16). In fact, the parties exchanged additional information and documents beyond even what this Scheduling Order requires in this matter, specifically to enable the Parties to properly assess the respective strengths and weaknesses of their cases, determine potential scope of damages and consider the pros and cons of settlement. This included the production of Plaintiff's wage statements, job history, and log on and log off activity from various systems that Plaintiff utilized to perform her job duties. The timekeeping and log on log off activities served as the basis for calculating potential damages and each side separately conducted their own analyses of the data.

After analyzing all documents and information exchanged, the Parties reasonably believed they had exchanged sufficient discovery such that they were

able to engage in settlement discussions. Indeed, the information obtained informed the Parties of the facts regarding this action and was helpful to the Parties in successfully conducting settlement discussions and ultimately led the Parties to reach a fair and reasonable resolution of this matter.

### iv. The Likelihood of Success on the Merits

Plaintiff's likelihood of success on the merits is uncertain. Sedgwick maintains that Plaintiff was properly classified as exempt under the FLSA based upon her job duties as Benefits Liaison and that she was properly compensated on a salary basis. Moreover, Sedgwick takes the position that even if it were unable to establish that Plaintiff qualified for the exemption (which Sedgwick does not believe would be the ultimate outcome), Plaintiff would not be able to demonstrate that she worked anywhere near the hours she claims to have worked, that she is entitled to 1.5 time their regular rate for overtime hours purportedly worked, or that Sedgwick's actions were willful. Thus, the statute would be limited to 2-years.

Plaintiff disagrees with Defendant and believes she was misclassified as exempt under the FLSA. Plaintiff further asserts she will be able to establish that she worked in excess of forty (40) hours per week and that Sedgwick's misclassification of her was willful.

The Parties recognize that if the Court were to find in Sedgwick's favor, Plaintiff would not obtain any recovery. The Parties submit that the potential for zero

recovery versus certainty of a fair and reasonable settlement weighs in favor of settlement. The proposed settlement will provide reasonable compensation to Plaintiff and eliminate the inherent risks both sides may bear if this litigation continued to resolution on the merits, and substantial resources can be conserved by avoiding the time, cost and rigor of protracted litigation. *Lynn's Food Stores, Inc., supra,* 679 F.2d at 1354 (recognizing policy of encouraging settlement of FLSA litigation). There can be no doubt that substantial time and money, both for this Court as well as the Parties, has been conserved in fairly settling now as opposed to continuing litigation, especially in light of the fact that the settlement was reached so early in litigation.

As outlined above, the Parties adamantly disagree about the merits of Plaintiff's claims and the viability of the various defenses. Continuing litigation would have been extremely time-consuming and costly for both sides. Consequently, the settlement provides a certain result and value now, as opposed to a speculative result that may occur years from now. These substantial benefits weigh heavily in favor of the Court's approval of the Parties' settlement.

## v. <u>Opinions of Counsel</u>

It is appropriate for the court to consider the opinion of the experienced wage and hour attorneys who have evaluated the strengths of the case. *See Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 557 (S.D. Ohio 2000) (internal citations

and quotation marks omitted) ("When considering a proposed settlement, the Court 'should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs'"). Counsel for both Parties possess extensive experience litigating FLSA collective actions and hold the opinion that this settlement is in the best interests of all Parties involved.

### C. The Attorneys Fees are Reasonable, But This Court Does Not Need to do a Separate Analysis of this factor.

The last item that a Court should generally evaluate in determining the fairness of an FLSA settlement is the reasonableness of the proposed attorneys' fees. *See e.g. Helms v. Cent. Fla. Reg'l Hosp.*, 2006 WL 3858491, at *2 (M.D. Fla. Dec. 26, 2006). However, where a plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then the court does not need to separately consider the reasonableness of the fee to be paid to plaintiff's counsel prior to approving the settlement unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to their attorney. *See, e.g., Bonetti v. Embarq Mgt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009). Here, there are no such factors present.

The Parties agreed that Sedgwick would pay Plaintiff's attorneys' fees and costs in the sum of $15,000.00. The negotiation of attorneys' fees was separate and distinct from the negotiation of the amount Plaintiff would recover; and, did not adversely affect nor compromise Plaintiff's recovery. Thus, the recovery of Plaintiff

was not compromised in any way by the amount paid in attorneys' fees and costs. Also, given the complexity of the case, and the tenacity of counsel, counsel for the Parties agree that the amount of attorneys' fees and costs recovered by Plaintiff's counsel for this litigation was reasonable. Accordingly, because the settlement is reasonable on its face and Plaintiff's recovery were not adversely affected by the amount of fees paid to her attorneys, the Court should approve the settlement.

### IV. CONCLUSION

**WHEREFORE,** the Parties respectfully request that, upon a finding that the FLSA Settlement is fair and adequate, this Court issue an Order granting the instant motion, approving the FLSA Settlement, and dismissing the case with prejudice.

Respectfully submitted this 2nd day of August 2023.

| | |
|---|---|
| LYTLE & BARSZCZ, P.A.<br>533 Versailles Drive<br>2nd Floor<br>Maitland, FL 32751<br>Telephone: (407) 622-6544<br>Facsimile: (407) 622-6545<br><br>By: */s/ Mary E. Lytle*<br>    Mary E. Lytle, Esq.<br>    Florida Bar No. 0007950<br>    mlytle@lblaw.attorney<br><br>    David V. Barszcz, Esq.<br>    Florida Bar No. 750581<br>    dbarszcz@lblaw.attorney<br><br>    Attorneys for Plaintiff | WILSON TURNER KOSMO LLP,<br>402 West Broadway,<br>Suite 1600,<br>San Diego California 92101,<br>Telephone: (619) 236-9600<br>Facsimile: (619) 236-9669<br><br>By: */s/   Mary P. Snyder*<br>    Mary P. Snyder, Esq.<br>    California Bar No. 211228<br>    msnyder@wilsonturnerkosmo.com<br><br>and,<br><br>QUINTAIROS, PRIETO, WOOD &<br>BOYER, P.A.<br>9300 South Dadeland Blvd.,<br>4th Floor<br>Miami, Florida 33156<br>Telephone: (305) 670-1101<br>Facsimile: (305) 670 1161<br><br>    Kimare S. Dyer, Esq.<br>    Florida Bar No. 0469920<br>    kimare.dyer@qpwblaw.com<br><br>Attorneys for Defendant |